UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THERESA GIACCHETTO,                                           DOCKET NO.:11 CV 6323
                                                                        (ADS)(AKT)
                     Plaintiff,

          -against-                                           **AMENDED COMPLAINT**

PATCHOGUE-MEDFORD UNION FREE
SCHOOL DISTRICT,

                     Defendant.                               Jury Trial Demanded
-------------------------------------------------------------X

Plaintiff, THERESA GIACCHETTO, by and through her attorneys, LEEDS, MORELLI & BROWN, P.C., as and for an amended complaint in this matter, respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This is a civil action based upon Defendant Patchogue-Medford Union Free School District's violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*., and the New York State Human Rights Law ("NYSHRL"), N.Y. EXECUTIVE LAW §§ 290 *et seq*., as well as any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. The supplemental jurisdiction of this Court is invoked over state causes of action, pursuant to under 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this cause of action, including the unlawful employment practices alleged herein, occurred in this district.

1

4. The jurisdictional prerequisites to this lawsuit have been satisfied. Specifically, Plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. On September 29, 2011, the EEOC issued a Right to Sue letter. Plaintiff commenced this action within ninety (90) days of her receipt of the EEOC's Right to Sue letter.

## PARTIES

5. Plaintiff, Theresa Giacchetto, ("Plaintiff" or "Ms. Giacchetto") is a resident of Suffolk County, New York. At all relevant times, Ms. Giacchetto was an "employee" as defined by all relevant statutes.

6. Defendant Patchogue-Medford Union Free School (" Defendant" or the "District") is a public school district organized under the laws of the State of New York with its principal place of business in the County of Suffolk, State of New York, and is the entity that is in control of the schools referenced in the body of this Amended Complaint. At all relevant times, the District employed over fifty employees and was an "employer" as defined by all relevant statutes.

## FACTUAL BACKGROUND

7. In September 1996, Ms. Giacchetto began working for the District as an elementary education teacher.

8. In June of 1999, Ms. Giacchetto received tenure with the District.

9. In September 2007, Ms. Giacchetto was assigned to teach fifth grade at River Elementary School (the "School"), which is located within the District.

10. In May 2010, Ms. Giacchetto received a highly positive evaluation for the 2009-2010 academic year, earning the highest rating in almost every category. Moreover, the test scores of

Ms. Giacchetto's students have been consistently high and her students show some of the highest growth rates of any teacher in the District.

11.     On December 21, 2010, Dr. David Winkler, Plaintiff's psychiatrist, diagnosed Ms. Giacchetto with adult Attention Deficit Hyperactivity Disorder ("ADHD").

12.     Symptoms of adult ADHD include difficulty staying focused and paying attention, difficulty controlling behavior, hyperactivity, and impulsivity.

13.     As a result of Plaintiff's ADHD, she is substantially limited in the following major life activities of concentrating, learning, thinking, communicating and interacting with others.

14.     Plaintiff informed the District of her disability on December 22, 2010, during a meeting with Dr. Tania M. Dalley.  Also present at this meeting were Dr. Margaret LaMorelle, a speech pathologist with the School, and Jennifer Accosta, a representative of Plaintiff's union. Upon learning of Plaintiff's diagnosis, Dr. Dalley mockingly repeated Plaintiff's words regarding her diagnosis in the open doorway where other office personnel could hear.

15.     Shortly thereafter, on January 3, 2011, Dr. Dalley issued a letter of counseling to Plaintiff based upon the events of December 22, 2010.

16.     Following receipt of this counseling letter, Plaintiff spoke with Mr. Neil Katz, Assistant Superintendent of Human Resources for the District, to explain her adult ADHD diagnosis and notify Mr. Katz that Plaintiff believed that she had been discriminated against by Dr. Dalley and Dr. LaMorelle because of her disability.  While Mr. Katz was generally not receptive to Plaintiff's concerns, he did ask that Plaintiff grant him permission to discuss her medical condition with her doctor.  Ms. Accosta was also present for this meeting as a union representative.

17. On January 5, 2011, Plaintiff emailed Mr. Katz and provided permission for the District to contact her doctor regarding her adult ADHD diagnosis and provided her doctor's contact information.

18. Also on January 5, 2011, Plaintiff filed a complaint with the New York State Division of Human Rights ("State Division") alleging discrimination on the basis of her disability. Plaintiff's complaint with the State Division was cross-filed with the EEOC.

19. On January 6, 2011, Plaintiff met with Paul Pecorale, the president of her union. At this meeting, Mr. Pecorale informed Plaintiff that Michael Locantore, Superintendent of Schools for the District, intended to bring some type of disciplinary charge against Plaintiff to the Board of Education ("BOE").

20. On January 14, 2011, Plaintiff met with Mr. Katz, Dr. Dalley, and Ms. Acosta to discuss a Teacher Improvement Plan ("TIP") that Mr. Katz and Dr. Dalley had previously placed Plaintiff on during the 2010-2011 school year.

21. TIPs are usually designed to improve the skills of a teacher. But in Plaintiff's case, the TIP only addressed Plaintiff's relationship with her colleagues, not her teaching skills – which were generally recognized as being excellent. The TIP was first proposed by Ms. Nancy Hancock and Ms. Karen Malone in June 2010, but was not implemented until November 2010. While the TIP initially provided that it would be reviewed every two weeks and that Plaintiff would be regularly evaluated and provided with appropriate feedback to improve her relations with certain colleagues and administrators, no evaluations were conducted, no feedback was provided to Plaintiff and no meetings were held to discuss the TIP until after Plaintiff notified Defendant of her disability and filed a complaint with the NYSDHR. Similarly, other teachers

who were given a TIP received mentors and other resources to assist them, but Plaintiff was provided with no such resources.

22. At the TIP meeting on January 14, 2011, which was supposed to focus on Plaintiff's relationships with colleagues, Dr. Dalley also gave Plaintiff a counseling letter regarding an alleged incident with a student.

23. On January 19, 2011, Plaintiff sent letters via certified mail to Dr. Dalley, Mr. Katz, and Mr. Locantore formally requesting that she be granted an accommodation for her disability.

24. On January 24, 2011, the BOE voted down Mr. Locantore's request to bring disciplinary charges against Plaintiff.

25. On January 28, 2011, Plaintiff learned that someone had opened personal mail that had been delivered to her at the School. While Dr. Dalley later admitted to opening Ms. Giacchetto's mail, she did not open the mail of similarly situated school personnel who did not suffer from a disability and who did not complain of discrimination.

26. On February 3, 2011, Plaintiff spoke with Joseph Lociavo (BOE member) and informed him that the administration's harassment of her was increasing in severity.

27. On February 25, 2011, Plaintiff filed a second complaint with the State Division Of Human Rights that alleged further discrimination on the basis of her disability as well as retaliation for having complained of such discrimination in her prior State Division complaint.

28. On March 4, 2011, Plaintiff attended another TIP meeting with Mr. Katz and Dr. Dalley. At this meeting, Plaintiff requested permission to tape the meetings as an accommodation for her disability; Mr. Katz and Dr. Dalley granted her request.

29. On March 9, 2011, Plaintiff received an email from the secretary of the assistant superintendent of instruction stating that her request to attend a workshop had been denied

5

because it was not intended for teachers in Plaintiff's building; yet the following day, Plaintiff learned that two other teachers from her building – who did not suffer from a disability and had not complained of discrimination – were permitted to attend the meeting.

30. Because Plaintiff was not permitted to attend this workshop, she was not able to receive training in a new reading program that was to be implemented at the School the following year. Accordingly, Plaintiff would not be eligible to participate in this program while these other teachers from her building that did not suffer from a disability and had not complained of discrimination were permitted to participate in this program. Participation in programs such as this allows teachers to improve their teaching skills and is generally positively reflected on their yearly evaluations. It is also considered when determining whether to promote an employee.

31. On March 16, 2011, Mr. Locantore sent Plaintiff a letter rescinding the prior accommodation for her disability, namely that she be permitted to record meetings between her and administration so that she could play them back later. Thus, the District eliminated the only accommodation that it had provided for Plaintiff's disability.

32. On March 22, 2011, Plaintiff received an email from Dr. Dalley notifying her that Mr. Locantore canceled her class' field trip. The email directed Plaintiff's attention to a memorandum regarding the scheduling of field trips that was dated after Plaintiff had planned the field trip. Additionally, Plaintiff had complied with all of the protocols provided for in the memorandum in planning her class' field trip.

33. When Plaintiff brought this to the attention of Mr. Locantore, Mr. Locantore claimed that the trip was cancelled for the failure to collect permission slips in advance, an issue not dealt with in the earlier-referenced memorandum. Similarly situated teachers who do not suffer from

6

disabilities and who did not complain of discrimination often collect permission slips on or close to the day of the trip and do not have their class trips canceled at the last minute. In fact, Evan Moston, whose students were also going on the same trip, was not similarly reprimanded for the planning of the trip.

34. On March 22, 2011, Plaintiff sent another formal written request to the District for reasonable accommodations for her disability. In this request she listed four possible accommodations.

35. On March 30, 2011, Plaintiff met with Mr. Katz, Dr. Dalley and Mr. Pecorale for a regularly scheduled TIP meeting. At this meeting, Mr. Katz presented three counseling letter to Plaintiff regarding recent minor incidents where Plaintiff was alleged to have engaged in inappropriate behavior. To the contrary, Plaintiff did not engage in any inappropriate behavior and did not deviate from standards to which other teachers are held. Accordingly, these counseling letters were further discrimination and retaliation against Plaintiff.

36. One of these counseling letters alleged that co-workers made harassment complaints against Ms. Giacchetto. The letter stated it was a follow-up to the meeting held on March 30, 2011, however, the letter was presented to Plaintiff at the start of the meeting and before Mr. Katz had an opportunity to speak with Plaintiff regarding the allegations.

37. At the meeting Mr. Katz informed Plaintiff that the harassment complaints were made by Dr. LaMorelle based upon two incidents, neither of which constituted harassment. For example, in the first "incident" Plaintiff was alleged to have harassed Dr. LaMorelle by saying "Good Morning" to Dr. LaMorelle several times which Dr. LaMorelle ignored. Similarly, the second "incident" involved a private conversation between Plaintiff and a co-worker regarding

7

non-District personnel that Dr. LaMorelle overheard and assumed was about her and, thus, made a harassment complaint.

38.     For her part, Dr. LaMorelle was not reprimanded for her hostile behavior towards Plaintiff in filing these baseless harassment complaints or for exhibiting hostile behavior towards Plaintiff during meetings to discuss their conflicts.  Similarly, while the School promptly investigated and responded to Dr. LaMorelle's complaints, this stands in stark contrast to the School's treatment of Plaintiff's complaints, which were never investigated or responded to.

39.     In the counseling letter, Plaintiff was instructed to refrain from using sarcasm and to avoid making comments that could be misconstrued.  Conversely, teachers who do not suffer from disabilities and did not complain of discrimination, including those who yelled at or harassed Ms. Giacchetto, were not given letters of counsel or warned about their behavior. Additionally, no other teachers were given such vague instructions as refraining from the use of sarcasm or making statements that could be misconstrued.

40.     On April 4, 2011, Dr. Dalley informed Plaintiff that she should prepare a lesson plan on mathematics for her observation lesson.  Prior to informing the District of her disability and making complaints of discrimination, Plaintiff was permitted to choose the type of lesson plan for her observations.  Indeed, similarly situated teachers who do not suffer from disabilities or complain of discrimination are allowed to choose the type of lesson to perform during an observation.  Additionally, Plaintiff was required to send her formal lesson plan to Dr. Dalley in advance of the observation, a demand that is not made of similarly situated teachers who do not suffer from disabilities and who did not complain of discrimination.

41.     On April 8, 2011, Dr. Dalley observed the mathematics lesson that she instructed Plaintiff to prepare for her observation.

42. On April 11, 2011, Dr. Dalley met with Plaintiff to advise her that Dr. LaMorelle had filed another harassment complaint against Plaintiff stemming from an "incident" where Plaintiff simply asked a colleague "What is going on?" when the colleague was walking past Plaintiff's classroom with Dr. LaMorelle.

43. On April 13, 2010, Dr. Dalley presented the written evaluation based upon her earlier observation. For the first time in Plaintiff's thirteen year career as an educator, she received a predominately negative observation report.

44. On May 9, 2011, Plaintiff met with Dr. Dalley and Victoria Atkins, a union representative. During the meeting, Dr. Dalley again mocked Plaintiff's disabilities by flapping her arms and attempting to mimic Ms. Giacchetto by saying something to the effect of, "Na na na na na. I have a disability and the District cannot do anything to me." Plaintiff was deeply offended by Dr. Dalley's comments.

45. On May 10, 2011, Plaintiff reported Dr. Dalley's behavior of the previous day to Mr. Katz during her TIP meeting. Mr. Katz dismissed Plaintiff's concerns and would only discuss the TIP.

46. On May 12, 2011, Plaintiff met with Mr. Locantore and Mr. Katz, along with their attorneys, regarding accommodations for Plaintiff's disability. Plaintiff relayed several possible accommodations and the District informed Plaintiff that they would look into providing these accommodations which included: (1) providing the TIP but not asking for comments immediately; (2) giving Plaintiff twenty-four hours before asking her to sign a TIP; (3) giving advanced notice of the topic of a meeting whenever possible; (4) altering the timing of meeting with Plaintiff so that class instruction did not have to immediately follow; and (5) providing more advice and support, as well as specifics with regard to the TIP.

47. During this meeting, the District also raised the possibility of transferring Plaintiff to another school. Plaintiff opposed any transfer and continued to make her opposition to an involuntary transfer known throughout the upcoming months.

48. In June 2011, fifth grade students attended orientation at the middle school. All fifth grade teachers in the District accompanied their students to the orientation except Plaintiff who was not allowed to attend. The students noticed Plaintiff's absence and questioned her about it, causing her embarrassment.

49. On June 2, 2011, Phyllis Cattell and Katherine Spiller, other teachers at the School, informed Plaintiff that, during a discussion of Ms. Cattell's and Ms. Spiller's annual performance review ("APR"), Dr. Dalley threatened Ms. Cattell and Ms. Spiller about being friendly with Plaintiff, saying something to the effect of being "guilty by association." Shortly thereafter, Ms. Cattell and Ms. Spiller received a negative evaluation for the first time in their long career as educators. Thus, Plaintiff was further ostracized from her colleagues as a result of Defendant's discrimination and retaliation against her.

50. On June 7, 2011, Plaintiff received a highly negative evaluation for the first time in her over thirteen-year career. Prior to informing the District of her disability and filing complaints of discrimination, Plaintiff never received an unsatisfactory rating in any category.

51. On August 8, 2011, Dr. Katz notified Plaintiff that she was being transferred to a third grade classroom at Barton Elementary School. Plaintiff had finally been able to teach fifth grade after wanting it for many years of teaching third and fourth grade. As a result of this transfer, Plaintiff was forced to learn a new set of policies, procedures and curriculum. The colleague that Plaintiff was assigned to work with was Ms. Robin Segal . Several years ago, Plaintiff reported that there were a lot of erasures on a state math assessment conducted by Ms. Segal.. An

investigation commenced and Ms. Segal was aware that Plaintiff's report had prompted the investigation.

52. On August 19, 2011, Mr. Locantore finally provided a formal response regarding the accommodations the District was willing to provide to Ms. Giacchetto for her disability. The accommodations included only that the District would provide: (1) twenty-four hours to review any documents before asking Ms. Giacchetto to sign the document; (2) advanced notice of the topics to be discussed at meetings whenever reasonably feasible; and (3) the scheduling of meetings in the afternoon when reasonably feasible.

53. In September 2011, Ms. Giacchetto began teaching at Barton Elementary School in the District.

54. On October 6, 2011, Judith Soltner (principal) issued a counseling letter to Ms. Giacchetto.

55. Throughout the 2011-2012 school year, the District has failed to comply with the accommodations that it had agreed to provide Plaintiff in that Plaintiff has been called to meetings without being notified of the topics to be discussed prior to the meeting.

56. Throughout the 2011-2012 school year, the District has subjected Plaintiff to further harassment and retaliation, including, but not limited to the following:

    a. Early in the 2011-2012 school year, Plaintiff was yelled at by Principal Soltner in front of her students because she took all of her students to the restroom following recess – a practice that was common in every school that Plaintiff worked in during her employment with the District;

b. On a number of occasions, Principal Soltner yelled at and threatened Plaintiff without any justification or provocation and – on one occasion slammed her office door just after Plaintiff entered her office;

c. In October 2011, Plaintiff was given a letter of counseling regarding a "complaint" that Defendant received from a parent following "Meet the Teacher Night" – yet Plaintiff is unaware of any other teachers being disciplined regarding similar concerns raised by parents;

d. On numerous times during the course of the 2011-2012 school year, Soltner claimed that Plaintiff was "disorganized" – a clear reference one of the symptoms of Plaintiff's disability – and on another occasion, told Plaintiff that she needed to "fix" her disability because Plaintiff was "an adult;"

e. Throughout the course of the 2011-2012 school year, Soltner has come to Plaintiff's floor to observe Plaintiff's classroom an excessive number of time – a fact confirmed by Stephanie Ida who has told Plaintiff that Soltner never came up their floor as much as she did during the 2011-2012 school year;

f. Similarly, whenever Superintendent Locantore visits Plaintiff's school, he makes a point to visit her classroom;

g. In March 2012, Principal Soltner told Plaintiff that she "had a reputation" and as a result co-workers were less likely to interact with her; and

h. In June 2012, Plaintiff was disciplined in a number of meetings with Soltner when she raised concerns about whether her students were being singled out by not receiving an award presented by the cafeteria workers a disproportionate number of times.

57. As outlined above, since informing the District of her disability, and filing complaints of discrimination, the District has harassed and intimidated Plaintiff by (i) issuing numerous counseling letters and reprimands for engaging conduct which other teachers, who do not suffer from a disability and who have not complained of discrimination, also engaged in; (ii) forcing Plaintiff to regularly attend meetings under the guise of a TIP where Plaintiff was harassed, criticized and falsely accused of engaged in certain behavior which often reduced Plaintiff to tears; (iii) issuing negative observations and year-end evaluations for the first time in Plaintiff's career, (iv) involuntarily transferring Plaintiff to a new school and grade level, despite Plaintiff's opposition to a transfer, (v) refusing to comply with Plaintiff's reasonable requests for accommodation and (vi) subjecting Plaintiff to disparate treatment as further harassment and retaliation.

## CLAIMS FOR RELIEF

58. As more fully set forth above, Defendant has taken adverse employment actions against Plaintiff, subjected her to a hostile work environment and/or maintained an atmosphere of adverse actions, which where were motivated, in part, by Plaintiff's disability/perceived disability and her request for reasonable accommodations, as well as her opposition to discriminatory practices, in violation of the ADA.

59. As more fully set forth above, Defendant failed to accommodate Plaintiff's disability despite numerous requests for reasonable accommodations and failed to engage in an ongoing, interactive process to find a reasonable accommodation for the Plaintiff in violation of the ADA and the NYSHRL.

60. As more fully set forth above, Defendants have taken adverse employment actions against Plaintiff, subjected her to a hostile work environment, and/or maintained an atmosphere

of adverse actions, which were motivated by Plaintiff's disability/perceived disability and her requests for reasonable accommodations, as well as her opposition to discriminatory practices, in violation of the ADA and the NYSHRL.

WHEREFORE, Plaintiff demands judgment against Defendant in the form of and/or for compensatory, pension, medical benefits, emotional, physical, and punitive damages (where applicable), lost pay, front pay, interest, injunctive relief, and any other damages permitted by law.  Plaintiff also demands judgment against Defendant for each cause action and for all applicable and permissible damages, in an amount to be assessed at the time of trial. Plaintiff further seeks injunctive relief, including but not limited to, the clearing of her personnel file of any wrongful disciplinary actions and a permanent injunction enjoining Defendants and its agents from any further actions abridging Plaintiff's rights.  Plaintiff further demands all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiff is entitled and/or which the court deems just and proper.

Dated: Carle Place, New York
      August 21, 2012

Respectfully Submitted,

LEEDS MORELLI & BROWN
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, N.Y. 11514
(516) 873-9550

_____/s/_____
GREGORY N. FILOSA (GF-5680)