**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
THERESA GIACCHETTO,

                            Plaintiff,

                                                             **ORDER**

            - against -
                                                   CV 11-6323 (ADS) (AKT)

PATCHOGUE-MEDFORD UNION FREE
SCHOOL DISTRICT,

                            Defendants.
--------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

        Plaintiff Theresa Giacchetto ("Plaintiff") asserts claims against Defendant

Patchogue-Medford Union Free School District (the "School District" or "Defendant") for

violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*., and the

New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290, *et seq*.

Pending before the Court is Defendant's motion to compel Plaintiff to provide authorizations for

the release of all records from Plaintiff's social networking accounts, including but not limited to

her Facebook, Twitter, and Myspace accounts [DE 24].   For the reasons that follow, the motion

is GRANTED in part and DENIED in part.

        According to the Amended Complaint [DE 15], Plaintiff began working as an elementary

education teacher for Defendant in 1996.   Am. Compl. ¶ 7.   On December 21, 2010, Plaintiff

asserts she was diagnosed with adult Attention Deficit Hyperactivity Disorder ("ADHD").   *Id*.

¶ 11.   Plaintiff claims that when she informed Defendant of her ADHD diagnosis, Dr. Tania M.

Dalley repeatedly mocked Plaintiff within earshot of others.  *Id.* ¶ 14.  On January 5, 2011, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") alleging disability discrimination.  *Id.* ¶ 18.  Thereafter, Plaintiff alleges that she was treated differently from other employees who did not have a disability and who did not file DHR complaints.  For example, Plaintiff asserts that the School District issued her numerous counseling letters and transferred her to a different classroom and grade level against her will.  *See id.* ¶ 57.  Plaintiff further alleges that the School District refused to accommodate her disability.  *Id.*  Based on these allegations, Plaintiff is seeking "compensatory, pension, medical benefits, emotional, physical, and punitive damages (where applicable), lost pay, front pay, interest, injunctive relief, and any other damages permitted by law."  *Id.* at p. 14.

Defendant argues that information from Plaintiff's social networking accounts is relevant to Plaintiff's claims of physical and emotional damages because it reflects her "levels of social interaction and daily functioning" and her "emotional and psychological state."  DE 24 at 2. Defendant also argues that any accounts of the events alleged in the Amended Complaint are discoverable.  *Id.*  Plaintiff argues that Defendant's request is based on pure speculation and a fishing expedition "designed to harass Plaintiff and unnecessarily impinge on her privacy in the hopes that it will produce something that can be used against Plaintiff."  DE 25 at 3.

### A.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The definition of relevancy under Rule 26 is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

be in th[e] case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy."); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable"); *Brown v. City of New York*, CV 2008-5095 FB MDG, 2011 WL 4594276, *1 (E.D.N.Y. Sept. 30, 2011) (stating when broader discovery is sought by the parties, the Court should determine the scope according to the reasonable needs of the action).

The fact that Defendant is seeking social networking information as opposed to traditional discovery materials does not change the Court's analysis.  *EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010) ("Discovery of [social networking postings] requires the application of basic discovery principles in a novel context."); *accord Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012).   The Court also notes that the "fact that the information [Defendant] seeks is in an electronic file as opposed to a file cabinet does not give [it] the right to rummage through the entire file."  *Howell v. Buckeye Ranch, Inc.*, No. 11-CV-1014, 2012 WL 5265170, at *1 (S.D. Ohio Oct. 1, 2012).[1]

---

[1]     Some courts have held that the private section of a Facebook account is only discoverable if the party seeking the information can make a threshold evidentiary showing that the plaintiff's public Facebook profile contains information that undermines the plaintiff's claims.  *See Potts v. Dollar Tree Stores, Inc.*, No. 11-CV-1180, 2013 WL 1176504, at *3 (M.D. Tenn. March 20, 2013); *Keller v. Nat'l Farmers Union Property & Casualty Co.*, No. 12-CV-72, 2013 WL 27731, at *4 (D. Mont. Jan. 2, 2013); *Tomkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012); *Romano v. Steelcase Inc.*, 30 Misc. 3d 426, 432, 907 N.Y.S.2d 650 (Sup. Ct. 2010). This approach can lead to results that are both too broad and too narrow.   On the one hand, a plaintiff should not be required to turn over the private section of his or her Facebook profile (which may or may not contain relevant information) merely because the public section undermines the plaintiff's claims.   On the other hand, a plaintiff should be required to review the private section and produce any relevant information, regardless of what is reflected in the

3

### B.      Discussion

Although Defendant apparently initially sought unlimited access to Plaintiff's entire social networking accounts, *see* DE 24 at 1, Defendant's motion to compel is limited to three categories of information: (1) postings[2] about Plaintiff's emotional and psychological well-being; (2) postings about Plaintiff's physical damages; and (3) any accounts of the events alleged in Plaintiff's Amended Complaint, *id*. at 2.   The Court will address each of these categories, as well as the proper method of producing the information which the Court deems relevant.

### 1.      Emotional Damages

Courts have reached varying conclusions regarding the relevance of social networking postings in cases involving claims for emotional distress damages.   Some courts have held that such information is relevant.   *See Reid v. Ingerman Smith LLP*, No. 12-CV-307, 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012) (holding that "statements regarding plaintiff's social activities may be relevant to plaintiff's claims of emotional distress and loss of enjoyment of life"); *Robinson v. Jones Lang LaSalle Ams., Inc.*, No. 12-CV-127, 2012 WL 3763545, at *1 (D. Or. Aug. 29, 2012) (finding it "reasonable to expect severe emotional or mental injury to manifest itself in some social media content"); *Sourdiff v. Texas Roadhouse Holdings, LLC*, No. 10-CV-0408, 2011 WL 7560647, at *1 (N.D.N.Y. Oct. 24, 2011) (directing plaintiff to

---

public section.   The Federal Rules of Civil Procedure do not require a party to prove the existence of relevant material before requesting it.   Furthermore, this approach improperly shields from discovery the information of Facebook users who do not share any information publicly.   For all of the foregoing reasons, the Court will conduct a traditional relevance analysis.

[2]      The Court understands "postings" to include status updates, profile information, messages, and photographs on the various social networking websites Plaintiff utilized.

produce social networking information related in any way to her emotional or mental state).

Other courts have questioned the probative value of the material.   *See Mailhoit*, 285 F.R.D. at

571 (noting that courts have held "the simple fact that a claimant has *had* social communication

is not necessarily probative of the particular mental and emotional health issues in the case");

*Holter v. Wells Fargo and Co.*, 281 F.R.D. 340, 344 (D. Minn. 2011) ("While everything that is

posted on a social media website is arguably reflective of a person's emotional state [the court]

would not allow depositions of every friend and acquaintance to inquire about every

conversation and interaction with plaintiff.").   This Court agrees with the latter approach.   The

fact that an individual may express some degree of joy, happiness, or sociability on certain

occasions sheds little light on the issue of whether he or she is actually suffering emotional

distress.   If the Court were to allow broad discovery of Plaintiff's social networking postings as

part of the emotional distress inquiry, then there would be no principled reason to prevent

discovery into every other personal communication the Plaintiff had or sent since alleged

incident.   As explained by Magistrate Judge Francis in *Rozell v. Ross-Holst*:

> To be sure, anything that a person says or does might in some
> theoretical sense be reflective of her emotional state.   But that is
> hardly justification for requiring the production of every thought
> she may have reduced to writing or, indeed, the deposition of
> everyone she might have talked to.

No. 05-CV-2936, 2006 WL 163143, at *3 (S.D.N.Y. Jan. 20, 2006) (ruling on motion to compel

emails that defendants claimed provided a contemporaneous record of plaintiff's emotional

state); *Kennedy v. Contract Pharmacal Corp.*, No. 12-CV-2664, 2013 WL 1966219, at *2

(E.D.N.Y. May 13, 2013) (denying motion to compel "all documents . . . reflecting and/or

regarding Plaintiff's expression of an emotional feeling while utilizing a social networking site"

where there was no specificity to the requests and no effort to limit requests to any relevant acts alleged in the action).   Thus, a plaintiff's entire social networking account is not necessarily relevant simply because he or she is seeking emotional distress damages.

In *Offenback v. L.M. Bowman, Inc.*, the defendants argued that the plaintiff's Facebook and MySpace accounts were relevant to his claim that he suffered physical and psychological injuries as a result of a vehicular accident.   No. 10-CV-1789, 2011 WL 2491371, at *1 (M.D. Pa. June 22, 2011).   Specifically, the defendants argued that the plaintiff's "social activities, transportation related activities, and expressions of emotion [were] relevant."   *Id.* The court conducted an *in camera* review and ruled that while certain posts reflecting that the plaintiff rode a motorcycle, possibly rode a mule, and hunted after the alleged accident were relevant, the remainder of the postings were not.   *Id.* at *2-3.   Notably, the Court did not order the production of any expressions of emotion or information about the plaintiff's social activities despite the fact that the plaintiff engaged in "routine communications with family and friends." *Id.* at *3.   Although the court did not directly address the issue, *Offenback* underscores an important distinction between the relevance of social networking information to claims for physical damages and claims for emotional damages.   While the relevance of a posting reflecting engagement in a physical activity that would not be feasible given the plaintiff's claimed physical injury is obvious, the relationship of routine expressions of mood to a claim for emotional distress damages is much more tenuous.   For example, a severely depressed person may have a good day or several good days and choose to post about those days and avoid posting about moods more reflective of his or her actual emotional state.   *See* Brown, Kathryn R., *The Risks of Taking Facebook at Face Value: Why the Psychology of Social Networking Should*

6

*Influence the Evidentiary Relevance of Facebook Photographs*, 14 Vand. J. Ent. & Tech. L. 357, 365 (2012) ("Because social networking websites enable users to craft a desired image to display to others, social scientists have posited that outside observers can misinterpret that impression.").

Based on the foregoing information, the Court concludes that Plaintiff's routine status updates and/or communications on social networking websites are not, as a general matter, relevant to her claim for emotional distress damages, nor are such communications likely to lead to the discovery of admissible evidence regarding the same.   The Court does find, however, find that certain limited social networking postings should be produced.   First, Plaintiff must produce any specific references to the emotional distress she claims she suffered or treatment she received in connection with the incidents underlying her Amended Complaint (e.g., references to a diagnosable condition or visits to medical professionals).   Moreover, in seeking emotional distress damages, Plaintiff has opened the door to discovery into other potential sources/causes of that distress.   Thus, any postings on social networking websites that refer to an alternative potential stressor must also be produced.  *See Holter*, 281 F.R.D. at 344; *Simply Storage*, 270 F.R.D. at 435.   These materials are to be served upon Defendant's counsel as directed in Section B.4. below.   However, unfettered access to Plaintiff's social networking history will not be permitted simply because Plaintiff has a claim for emotional distress damages.

**2.     Physical Damages**

Defendant also seeks information bearing on Plaintiff's claim for physical damages. Postings or photographs on social networking websites that reflect physical capabilities inconsistent with a plaintiff's claimed injury are relevant.  *See Scipione v. Advance Stores Co.*, *Inc.*, No. 12-CV-687, 2013 WL 646405, at *1 (M.D. Fla. Feb. 21, 2013) (approving parties'

7

agreement in personal injury action to have plaintiff produce Facebook content referring to her knee or her alleged injury); *Davenport v. State Farm Mutual Automobile Ins. Co.*, No. 11-CV-632, 2012 WL 555759, at *2 (M.D. Fla. Feb. 21, 2012) (ordering production of Facebook photographs depicting plaintiff since date of alleged accident since plaintiff's physical condition was at issue); *Offenback*, 2011 WL 2491371, at *1 (discussed *supra*).   In this case, however, other than a brief reference to physical damages in the *ad damnum* clause, Plaintiff does not describe any physical damages and the Court is unaware of what type of physical harm she suffered.   As such, the Court is directing Plaintiff to confirm in writing that she is pursuing relief for physical damages and, if so, specify the claimed harm.   This statement is to be served on Defendant's counsel, with five (5) days of the Court's Order.   The Court will address the scope of social networking discovery as it pertains to physical damages upon receipt of Plaintiff's statement.[3]

### 3.    Allegations in the Amended Complaint

Defendant also seeks "any accounts of the events alleged in plaintiff's Amended Complaint – contradictory or otherwise . . . ."   DE 24 at 2.   Such information is relevant and to the extent that such information exists on any social networking account maintained by the Plaintiff, Plaintiff must produce that information.   *See Howell*, 2012 WL 5265170, at *1 (denying broad access to plaintiff's social networking websites, but permitting defendant to serve requests for production of information on those websites tailored to the claims and defenses in the lawsuit); *Mailhoit*, 285 F.R.D. at 572 (granting motion to compel social

---

[3]      The Court notes that after the Court issued this ruling at the May 6, 2013 conference, counsel for Plaintiff submitted a letter advising the Court that she is no longer claiming physical damages.   DE 34.   Thus, there is nothing further to address with respect to any production concerning physical damages.

networking information to the extent that it constituted communications between plaintiff and

defendant's employees or referred to plaintiff's employment with defendant or the lawsuit).

Plaintiff is therefore required to produce, as directed in Section 4.B. below, any social

networking postings that refer or relate to any of the events alleged in the Amended Complaint.

**4.     Method of Production**

Having determined the scope of relevant information, the Court turns to the final issue

raised in the parties' submissions – the method of producing information from Plaintiff's social

networking accounts.   Defendant seeks authorizations for the release of records from these

accounts and presumably intends to subpoena the companies which host Plaintiff's accounts.

Defendant also requests that Plaintiff's counsel conduct an independent review of the accounts

for relevant material, instead of relying on the Plaintiff's conclusion that there is no relevant

information in the account as counsel has previously done.   Plaintiff takes no position on these

issues.

First, the Court sees no basis at this time why Defendant should go through a third-party

provider to access Plaintiff's social networking postings when Plaintiff has access to this

information herself.  *See Howell*, 2012 WL 5265170, at *1 (ordering plaintiff's counsel to

access plaintiff's social media accounts and produce responsive information as opposed to

having plaintiff provide defendant with her usernames and passwords); *Anthony v. Atlantic Gr.,

Inc.*, No. 09-CV-2942, 2012 WL 4009490, at *2 (D.S.C. Sept. 12, 2012) (directing plaintiff to

access and produce social networking postings directly as opposed to having defendant seek the

information from the service providers); *In re White Tail Oilfiled Servs., L.L.C.*, No.

11-CV-0009, 2012 WL 4857777, at *3 (E.D. La. Oct. 11, 2012) (directing party to download and

produce Facebook information); *In re Air Crash Near Clarence Ctr., New York*, No. 09-md-2085, 2011 WL 6370189, at *6 (W.D.N.Y. Dec. 20, 2011) (denying request for authorizations subject to renewal if plaintiff's production was insufficient).   This Court finds the approach utilized in *Howell* to be persuasive and reasonable.   Therefore, the Court directs that Plaintiffs postings be reviewed for relevance by Plaintiff's counsel and that Plaintiff's counsel – *not Plaintiff* – make a determination regarding the relevance of the postings, keeping in mind the broad scope of discovery contemplated under Rule 26.   *See Sourdiff*, 2011 WL 7560647, at *1 (directing plaintiff's counsel to review plaintiff's social networking information for production); *Rozell*, 2006 WL 163143, at *4 (holding that "counsel for the producing party is the judge of relevance in the first instance").   The review and production of any relevant material is to be completed within 21 days.

**SO ORDERED.**

Dated: Central Islip, New York
      May 6, 2013

           /s/ A. Kathleen Tomlinson
           A. KATHLEEN TOMLINSON
           U.S. Magistrate Judge